UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KATHY STAHL,<br><br>Plaintiff<br><br>vs.<br><br>CHARLES MEHLHAFF, et al<br><br>Defendants | 4:21-cv-4080<br><br>MEMORANDUM OPINION<br>AND ORDER |

Pending before the Court is Defendants' Motion to Compel Arbitration and Motion to Dismiss. (Doc. 17). Defendant claims the employment contract Plaintiff entered into with Defendants requires that the parties arbitrate certain disputes. Plaintiff resists the Motion, primarily by challenging whether a valid arbitration agreement exists. (Doc. 22).

**BACKGROUND**

Although Plaintiff now disputes who employed her, there is substantial evidence to support that she was employed by Subway of Huron South, Inc., from April 26, 2019 until, as she alleges, she was constructively discharged on March 3, 2020. (Doc. 9) She has filed suit alleging Defendants violated the Americans with Disabilities Act, Age Discrimination in Employment Act, and other claims. Id.

1

Plaintiff alleges she is over the age of 40 and has a hearing impairment, of which Defendants were aware based on Plaintiff's previous employment with them at a different Subway. Id. In response to Plaintiff's allegations, Defendants argue Plaintiff was not fired in violation of these statutes, but for conduct at the workplace, including her inability to get along with co-workers. (Doc. 16, PgID 71-73, 78).

As pertinent to this case, when Plaintiff applied for a position with Defendants, she was asked to complete an employment application. The five-page application including, a two-page Agreement to be Bound by Alternative Dispute Resolution Policy, (Doc. 19-1) is part of a lengthy Employee Hire Packet. (Doc. 27-1). Among other provisions, such as agreeing to a background check and to drug testing, the application includes provisions which require the applicant to agree to arbitration to resolve certain employment disputes. (Doc. 19-1, PgID 110; Doc. 27-1, PgID 163). The document shows Plaintiff initialed these provisions and signed the page indicating agreement to submit disputes to arbitration. Id. Following those provisions is a two-page Agreement to be Bound by Alternative Dispute Resolution Policy (Doc. 19-1, PgID 111-112; Doc. 27-1, PgID 164-165). Plaintiff signed in all designated sites for the prospective employee's signature but the employer's signature does not appear on the document. Id.

**STANDARD OF REVIEW**

The Federal Arbitration Act does not identify the evidentiary standard a party seeking to avoid arbitration must meet. *Neb. Mach. Co. v. Cargotec Solutions, LLC*, 762 F.2d 737, 741-42 (8th Cir. 2014); *Claussen v. American Family Life Assurance Co.*, 2018 WL 4972565, *1 (D.S.D. 2018). In addressing the issue, courts have concluded that a summary judgment standard is appropriate. *Schwalm v. TCF Nat'l Bank*, 226 F.Supp.3d 937, 940 (D.S.D. 2016); *Rahm v. TCF Nat'l Bank*, 2017 WL 3605359, *2 (D.S.D. 2017); *Technetronics, Inc. v. Leybold-Graeus GmbH*, 1993 WL 197028, at *2 (E.D. Pa. 1993). In accordance with the summary judgment standard of Federal Rule of Civil Procedure 56(c), the court may consider all evidence in the record, viewing the evidence in the light most favorable to the non-moving party. *Rahm*, 2018 WL 3605359, *2; *Lee v. Credit Acceptance Corp.*, 2015 WL 7176374, at *1 (W.D. Wis. 2015).

**ANALYSIS**

**1. Arbitration**

Both the federal and state governments have recognized that arbitration is a permissible means of resolving disputes, and have adopted strong policies favoring it. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000); *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration."). The Federal

Arbitration Act (FAA), 9 U.S.C.§ 1, *et seq*, governs arbitration and embodies the policy of treating arbitration agreements like any other contract. *Green Tree*, 531 U.S. at 89. See also *Northport Health Services of Arkansas, LLC v. US Dept of Health and Human Services*, 14 F.4th 856, 866 (8th Cir. 2021). South Dakota has adopted the Uniform Arbitration Act, and provides at S.D.C.L. § 21-25A-1 as follows:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This chapter also applies to arbitration agreements between employers and employees or between their respective representatives.

S.D.C.L. § 21-25A-1.

In determining whether the parties agreed to arbitrate, the court ordinarily applies "state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). While doing so, the court must give "due regard" to the policies favoring arbitration. *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989). The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3,4). The "court's role under the FAA is therefore limited to determining (1)

whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). See also *Foster v. Walmart*, 15 F.4th 860, 862 (8th Cir. 2021). As the Eighth Circuit has noted, an arbitration agreement can "be *invalidated* by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Northport*, 14 F.4th at 867 (cleaned up).

In the present case, South Dakota's contract law governs in determining whether the parties formed a valid agreement to arbitrate. South Dakota courts apply ordinary contract principles to arbitration agreements. *Mastellar v. Champion Home Builders, Co.* 723 N.W.2d 561 (S.D. 2006). The required elements to form a valid contract in South Dakota are (1) parties capable of contracting; (2) their consent; (3) a lawful purpose; and (4) sufficient consideration. *Setliff v. Akins*, 616 N.W.2d 878 (S.D. 2000) (citing S.D.C.L. § 53-1-2). In *Mastellar*, the problem before the Court was the interpretation of documents submitted to plaintiff homebuyers in the course of purchasing and seeking subsequent repairs to a manufactured home. 723 N.W.2d at 562. There was no dispute that the initial contract between the parties did not contain an arbitration clause, but that a subsequent "Homeowners Guide, Limited Warranty

and Arbitration Agreement" was given to the homeowners by the homebuilders. *Id.* at 563. Despite Defendant's claim that this document and the plaintiffs' seeking additional work on the house constituted acceptance of the arbitration provision, the South Dakota Supreme Court disagreed. In the court's view, "there was no unambiguous conduct evincing acceptance of the benefits of the Homeowner's Guide with its mandatory arbitration clause." *Id.* at 566. Plaintiffs had signed only the initial contract for the home and there was "no mutual assent" with respect to the arbitration agreement the Defendants sought to enforce. *Id.*

In the case before this court, there is no dispute that the parties were capable of contracting, that the employment contract with its arbitration agreement had a lawful purpose, and that the consideration was sufficient. S.D.C.L. § 53-1-2. The court finds these aspects of South Dakota law are met. As *Masteller* notes, however, "mutual assent" is necessary, *id.* at 563, and that is pertinent to the issues before the court. Plaintiff contests whether there was consent to the agreement because the employer apparently did not sign the agreement, and did not "condition the initialing of her application form as an agreement to arbitrate." (Doc. 22, PgID 125). Plaintiff's position is that absent the signature of the employer, mutual assent was lacking and the agreement was not valid. Id.

6

Plaintiff relies on *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686 (5th Cir. 2018) where the court invalidated an arbitration agreement that the employer had failed to sign. The task before the court was to interpret Texas contract law, and in doing so, the court made a number of observations. First, in determining whether a signature on a contract is necessary, ascertaining the intent of the parties is crucial. *Id.* at 689. Further, Texas contract law has been interpreted not to require the signatures of the parties, as long as the parties consent to the terms and do not otherwise require signatures on the document. *Id.* Furthermore, a signature block is not sufficient to impose a requirement that the parties sign the document. *Id.* In the case before it, the court noted, the language of the contract prepared by the employer provided that by "signing the agreement the parties are giving up any right they may have to sue each other," *id.*, and that the agreement could not be modified except if any change was in writing and "signed by all parties." *Id.* at 688. In the court's view, this express language clearly indicated an intent for the parties to be bound to the arbitration agreement only by signing it. *Id.* at 691. As the court concluded, "in this case, we have more than a blank signature block that speaks to the parties' intent. The agreement also contains language that the parties needed to sign the agreement to give it effect or to modify it." *Id.* at 690. The question of the employer's intent "is answered by the agreement it drafted." *Id.* It is noteworthy that in a subsequent case which, pursuant to U.S. Ct. of App. 5th

7

Cir. Rules 28.7 and 47.5 governs only the facts before it and cannot be cited as precedent, the 5th Circuit reached the opposite conclusion about an employment contract. In *Trujillo v. Volt Management Co.*, 846 Fed. Appx. 233 (5th Cir. 2021), the court concluded that the absence of the employee's signature did not invalidate the arbitration agreement because there was no express language in the employment agreement stating that the parties would be bound only if the document were signed, and the FAA does not require a signed agreement. *Id.*

Defendant raises several counter arguments to Plaintiff's argument that *Huckaba* requires invalidation of the contract provisions requiring arbitration. First is the argument that *Huckaba* has been interpreted subsequently to have a narrow application only to those contracts that include language requiring that the parties "execute and deliver" the document for it to be valid. *Soni v. Solera Holdings, Inc.*, 2021 WL 1726891 (N.D. Texas 2021) (appeal pending). In *Soni*, the District Court interpreted the 5th Circuit's reasoning in *Huckaba* to apply to contracts that have the "execute and deliver" language, but that Texas law more broadly, which was at issue, does not require both parties to have signed the document to make it binding. *Id.* at *5. The court interpreted contract language that the Company "shall execute the arbitration agreement set forth…" to not require the Company's signature on the document to make it binding. *Id.* Texas law as interpreted by several courts endeavoring to apply *Huckaba* have reached

8

opposite conclusions about whether a signature is required as evidence of mutual assent.  Compare *Daya v. Sky*, 2021 WL 4431108 (S.D. Texas 2021) (memorandum and recommendation) (intent of parties that signature required); *Hi Tech Luxury Imports, LLC v. Morgan*, 2019 WL 1908171, *2 (Tex.App.-Austin 2019) (same) with *Price v. Santander Consumer USA, Inc.*, 2019 WL 4318883 (N.D. Texas 2019) (language of contract does not indicate both must sign).  See also, *Delta Fuel Co., Inc. v. Abbott*, 2019 WL 3810047, *5 (W.D. La. 2019) (report and recommendation) (interpreting Louisiana contract law and concluding signatures not required).

In further support of its position Defendant relies on *Dickson v. Gospel for Asia*, 902 F.3d 831 (8th Cir. 2019).  In *Dickson*, members of a charitable and religious organization brought suit alleging employees had diverted funds for their personal aggrandizement. *Id.* at 833-34.  The issue before the court was the validity of an arbitration provision in a "Statement of Agreement" which required reciprocal arbitration of certain disputes. *Id.*  The defendants moved for arbitration, and the plaintiffs responded by challenging the validity of the agreement on several grounds, particularly alleging lack of mutuality. *Id.* at 833.  The Eighth Circuit concluded that the agreement "creates an enforceable reciprocal agreement to arbitrate disputes." *Id.* at 834.  The court interpreted the Texas law which governed the agreement as not requiring the parties to sign a document to make a

contract valid, and thus, the arbitration provision in the document was valid and enforceable. *Id.* at 835. The court stated, "We have no doubt that GFA assented to the agreements at issue and intended them to be enforceable: GFA drafted the agreements and affixed its letterhead to them; it maintained the agreements; and it seeks to enforce them." *Id.* The Defendants' promise to be bound was "sufficient consideration to render the agreements enforceable." *Id.*

The fact-specific holding with respect to the agreement to arbitrate in *Gospel For Asia* is consistent with more general guidance about the existence and validity of contracts set forth in the *Restatement (Second) of Contracts*. For example, as applicable to the present dispute, §18, **Manifestation of Mutual Assent** provides as follows: "Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance." Id. § 18. That provision is followed by § 19, **Conduct as Manifestation of Assent** which reads as follows: "(1) The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act. (2) The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents...." Id. § 19.

The *Restatement* further provides at § 50, **Acceptance of Offer Defined; Acceptance by Performance; Acceptance by Promise**: "(1) Acceptance of an

10

offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer. (2) Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise...." Id. § 50.

Courts interpreting South Dakota law have applied these concepts in numerous cases. For example, in *Baker v. Masco Builder Cabinet Group, Inc.*, 912 F. Supp. 2d 814 (D.S.D. 2012), employees of a business were notified by the employer that the plant was closing. *Id.* at 817. The employer distributed a memo to the employees addressing terms of severance packages. *Id.* at 818. Subsequently, the employer sent a second memo about the terms of severance to correct an error published by local media, while also informing employees that if they continued to work for the company until the plant closed, they would receive the severance packages. *Id.* Employees who remained with the company until it closed were not given the severance packages and the employer subsequently informed them there was no contract requiring payment. *Id.* at 819. Plaintiffs filed suit seeking compensation in accordance with the company memos. In resolving the dispute, the court cited the South Dakota Supreme Court's language in *Geraets v. Halter*, 588 N.W.2d 231, 234 (S.D. 1999) (cleaned up) that "Whether a contract is formed is judged objectively by the conduct of the parties, not by their subjective intent," and concluded a contract had been formed. *Baker*, 912 F. Supp. 2d at 821.

The court emphasized the company's meeting with employees and its issuance of two memos explaining the severance it offered, and concluded the company's "conduct is evidence of its intent to enter into a binding agreement and of its consent to the contract." *Id.* From the employees' perspective, an offer had been made and those who remained working at the plant until closure performed their part of the bargain, such that "each plaintiff's performance of the conditions of MBCG's offer was a manifestation of his or her acceptance." *Id.* at 822. The documents at issue in *Baker* were memos issued by the company, and were not documents embodying all of the details of a traditional written contract. Yet, in resolving the dispute, the court applied South Dakota contract law in ordering relief for the plaintiffs.

In *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 891 F. Supp. 2d 1088, 1096 (D.S.D. 2012), involving a dispute over whether the parties had mutually agreed to binding arbitration where it appeared one party had not received the page of the document requiring it, the court summarized the applicable contract law as follows:

> South Dakota contract formation law requires a meeting of the minds on a set of terms to give rise to a contract. *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 2011 S.D. 38, ¶ 12, 800 N.W.2d 730, 734; see also *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 20, 736 N.W.2d 824, 832. The question of mutual consent is determined by considering the parties' actions, as well as their words. *In re Estate of Neiswender*, 2003 S.D. 50, ¶ 20, 660 N.W.2d 249, 253. "An offeree that takes the benefit of

> services offered is bound by the terms of the offer if the offeree had a reasonable opportunity to reject them." *Masteller v. Champion Home Builders Co.*, 2006 S.D. 90, ¶15, 723 N.W.2d 561, 565 (quoting E. Allen Farnsworth, *Contracts* § 3.15 at 156 (2d ed. 1990)).

891 F.Supp.2d at 1096. The court concluded there was no binding agreement to arbitrate in the absence of mutual assent. *Id.* at 1097.

As is evident, South Dakota contract law focuses on the mutual assent to the substance of the agreement between the parties. It is true that under certain circumstances signatures to a contract are required by statute. For example, in the context of hiring a teacher, S.D.C.L. § 13-43-4 requires a written contract with the signatures of the teacher, school board president, and business manager of the school district. See *Minor v. Sully Buttes School Dist. No. 58-2*, 345 N.W.2d 48 (S.D. 1984). See also, S.D.C.L. § 53-8-2 (Statute of Frauds). In the absence of a statute, a court may find mutual agreement even absent the formality if the facts so warrant, such as in *Baker*, 912 F. Supp. 2d at 821. See also *Knigge v. B & L Food Stores, Inc.*, 890 N.W.2d 570 (S.D. 2017) (oral employment agreement did not violate statute of frauds; remand to determine terms of severance).

The case now before the court poses the question whether the employer's failure to sign a document which contains an arbitration requirement renders that requirement inoperable. It is noteworthy in this case that the document at issue was prepared by the Defendant-employer, which seeks a ruling that the agreement

13

is binding on both the Plaintiff and itself. The document was given to the Plaintiff, who signed it, thus manifesting her intent to enter into the agreement. S.D.C.L. § 53-12-21. Once Plaintiff signed the document and was hired, the employer filed it with Plaintiff's personnel records. (Doc. 27-1, PgID 156). Most important, and resonant of *Restatement (Second) of Contracts,* § 50, Plaintiff manifested her consent by going to work for Defendants, which in turn, manifested their consent to the agreement by paying Plaintiff the agreed-upon wages for a period of over ten months. Performance by both parties and benefit to both parties demonstrate the existence of an employment agreement. The terms of the agreement were set forth in the Employee Hire Packet, (Doc. 27-1) which includes the provisions requiring arbitration. Analysis of the validity of those specific provisions follows.

      Plaintiff raises two challenges to the arbitration provisions. First, Plaintiff asserts the lines for the employer's signature on the employee application which were left blank make it impossible to know who the employer is and with whom she entered into an employment contract. (Doc. 22). Plaintiff signed a form acknowledging receipt of certain information and agreement to certain conditions as well as an Agreement to Be Bound by Alternative Dispute Resolution Policy, which are three pages of the seventy-seven page Employee Hire Packet, on April 26, 2019 (Docs. 19-1 and 27-1). At least 27 pages in the Employee Hire Packet (Doc. 27-1) list SUBWAY as the employer, and as Defendants point out, that is the

employer listed on the direct deposit on her paycheck. (Doc. 27-1 PgID 170). Plaintiff also acknowledges that she had worked for Defendants previously at a Subway. (Doc. 1, PgID 3). It is reasonable to conclude that Subway, or one of its management companies, was the Plaintiff's employer and a party to the employment agreement.

More pertinent to the dispute between the parties is Plaintiff's second challenge. Plaintiff alleges that blank lines and failure of the employer to sign invalidate the arbitration agreement because they demonstrate lack of mutual consent. There are three blank lines in what the employer designates as the Employment Application and Agreement to be Bound by Alternative Dispute Resolution Policy, (Doc. 19-1, PgID 110-112; Doc. 27-1, PgID 163-165), and the blank lines on at least six additional pages of the Employee Hire Packet (Doc. 27-1, PgID 164, 165, 169, 173, 204, 222), either for the name of the company or employer's signature. With respect to the employee's agreement to arbitrate in the employment application, there are two blank lines where the company name should be filled in and one line for the employer's signature. (Doc. 27-1, PgID 164-165). The two-inch blank line for the company's name on the Agreement to be Bound by Arbitration (Doc. 27-1, PgID 164) is immediately followed by a sentence which describes the arbitration agreement as follows:

> IN CONSIDERATION FOR AND AS A MATERIAL CONDITION OF EMPLOYMENT WITH THE COMPANY, AND IN CONSIDERATION FOR THE COMPANY'S RETURN AGREEMENT TO BE BOUND BY THE COMPANY'S ADR POLICY AND HAVE ANY AND ALL CLAIMS IT MAY ENJOY AGAINST ME STEMMING FROM THE EMPLOYMENT RELATIONSHIP RESOLVED IN THIS FORUM, AND PAY THE ARBITRATION FEES AS DESCRIBED THEREIN, IT IS AGREED THAT THE _____. ALTERNATIVE DISPUTE RESOLUTION POLICY ATTACHED HERETO WHICH PROVIDES FOR FINAL AND BINDING ARBITRATION, IS THE EXCLUSIVE MEANS FOR RESOLVING COVERED DISPUTES; NO OTHER ACTION MAY BE BROUGHT IN COURT OR IN ANY OTHER FORUM. I UNDERSTAND THAT THIS AGREEMENT IS A WAIVER OF ALL RIGHTS TO A CIVIL COURT ACTION FOR ALL DISPUTES RELATING TO MY EMPLOYMENT, THE TERMS AND CONDITION OF MY EMPLOYMENT, AND/OR THE TERMINATION OF MY EMPLOYMENT WHETHER BROUGHT BY ME OR THE COMPANY; ONLY AN ARBITRATOR, NOT A JUDGE OR JURY, WILL DECIDE THE DISPUTE.

(Doc. 27-1, PgID 164-165).

Although placement of the line in the quoted section while failing to complete it with the word "SUBWAY" is careless, the blank line does not make the arbitration provisions ambiguous or incomprehensible. The applicable phrase for resolution of the parties' dispute is the language requiring that disputes between the parties be handled by arbitration if they revolve around disputes, terms and conditions of employment, and termination of employment. (Doc. 27-1, PgID 163). Additional critical language makes the agreement reciprocal: the employee is bound "in consideration for the company's return agreement to be bound by the company's

ADR policy" whether the claim "is brought by me or the company." (Doc. 27-1, PgID 164).

As *Dickson* indicated, an agreement written with language of this type binds both parties. 902 F.3d at 835. Further, the court noted, it is most unlikely that an arbitration provision drafted by a party and sought to be enforced by the same party would not likewise be enforced against that party. *Id.*

Comparable language to the phraseology that appears in the Defendants' employment application form has been approved in several cases. For example, in *Rahm*, the language in the employment application provided that "By applying for employment or accepting employment, you agree with TCF, and TCF agrees with you, to resolve all Covered Claims pursuant to TCF's Dispute Resolution Policy." 2017 WL 3605359, *2. Although the plaintiff did not raise an issue about the parties' signatures on the document, he challenged the validity of the agreement. *Id.* at *3. The court found that Plaintiff had electronically signed the agreement and had entered into a valid contract. *Id.* at *4. The court further found the language was binding and, as a consequence, ordered arbitration. *Id.* Likewise in *Schwalm v. TCF,* 226 F. Supp. 3d 927, 940 (D.S.D. 2019), the court interpreted an employment agreement requiring arbitration, and rejected several arguments that it was unconscionable and therefore unenforceable. *Id.* at 942-44. The court noted

the contract was reciprocal in requiring arbitration of disputes, and among other reasons, that it did not lack mutuality and was enforceable. Id. at 944.

Plaintiff's claim that the failure of the employer to sign the agreement renders it invalid is unpersuasive, given the language creating a mutual agreement to arbitrate. The court finds the parties intended to enter into an employment agreement that required arbitration, and further finds Plaintiff was aware that the employer with whom she agreed was SUBWAY. Therefore, the court orders arbitration of the employment dispute between the parties.

## 2. Additional issues

Plaintiff concedes that if the Court determines the arbitration agreement in the employment application is valid, Plaintiff's claims of discrimination are encompassed within it. (Doc. 22, PgID 125). Given the Court's ruling that the arbitration provisions are valid, Plaintiff's concession resolves that the discrimination claims are subject to arbitration.

Plaintiff has agreed to dismiss the retaliation claim against Defendants (Doc. 22, PgID 131), and that claim is hereby dismissed. Plaintiff has agreed to dismiss Matthew Mehlhaff and Charles Mehlhaff as individual Defendants (Id.), and they are hereby dismissed as individual defendants.

Defendants have withdrawn their challenge to the service on W. F. Castle (Doc. 26, PgID 153), and that claim is dismissed. Defendants continue to challenge whether W. F. Castle is a proper party to this lawsuit, but reserve that challenge for further proceedings. Id.

### 3. Stay or Dismissal

Defendants have moved in the alternative for an order compelling arbitration or dismissal (Doc. 17). The Court has ordered arbitration. In accordance with 9 U.S.C. § 3, the Court "shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." In *Green v. SuperShuttle Intern, Inc.,* 653 F.3d 766, 769-70 (8th Cir. 2011), the court explained that the rationale for § 3 is that it may not be clear that all issues will be resolved by arbitration, and that the disadvantaged party my be unable to re-file suit because of the running of the statute of limitations. *Id.* at 770. Therefore, the Court will stay the action pending completion of the arbitration.

Accordingly, IT IS ORDERED:

1. That the case is referred to arbitration.

2. That the case is stayed pending the completion of arbitration.

3. That Plaintiff's retaliation claim is dismissed.

4. That Matthew Mehlhaff and Charles Mehlhaff as individuals are dismissed from this case.

5. That Defendants' challenge to service of W.F. Castle is dismissed.

Dated this 7th day of December, 2021.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK